## Ira P. Bacon *vs.* Henry M. Towne & others.

An action for maliciously prosecuting the plaintiff by indictment cannot be maintained, unless it be alleged in the declaration and proved, that the plaintiff has been fully acquitted of the charge in the indictment; and a discharge therefrom by the entry of a *nolle prosequi* is not sufficient; but the plaintiff is not bound to prove that he was acquitted by the jury promptly, without hesitation, delay, or deliberation.

In an action for malicious prosecution, the judgment of the magistrate, by whom the plaintiff was bound over for trial, on a complaint which the magistrate had no jurisdiction to try, if admissible at all as evidence of probable cause, is *prima facie* evidence only, and not conclusive.

The judgment of the magistrate, by whom the plaintiff in an action for malicious prosecution has been bound over, to answer to a criminal charge, if relied upon as evidence of probable cause, cannot be controlled or impeached by evidence that he acted unfairly and improperly in the examination.

In an action for a malicious prosecution of the plaintiff before a magistrate, it is not incumbent upon him, in proof of want of probable cause, to give in evidence all the evidence introduced before the magistrate, in order that the court may determine whether there was or was not probable cause.

If, in an action for a malicious prosecution, in instituting proceedings before a magistrate, against the plaintiff, on a criminal charge, upon which the plaintiff was bound over and subsequently indicted, it appear that the indictment has been withdrawn by a *nolle prosequi*, on account of a formal defect therein, and that a second indictment has been returned upon the same evidence, for the same or a substantive part of the same charge, the original complaint and the proceedings thereon must be considered as the actual cause of the second indictment.

Probable cause for instituting a prosecution is such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person accused is guilty.

The defendant, in an action for a malicious prosecution, may prove by the magistrate, before whom the prosecution was instituted, what the testimony before him was on the part of the government, in order to show probable cause and rebut the allegation of malice; and it is not necessary, for this purpose, that the witnesses by whom the testimony was given, or their depositions, should be produced; but, it produced, and the witnesses or deponents are unable to recollect what their

testimony was, it may nevertheless be proved by the magistrate. So, for the same purpose, the defendant may prove, that a certain person communicated to another, with a request that the latter would make it known to the defendant, the fact that the former saw the plaintiff do the criminal act of which he was accused, and that this information was communicated to the defendant, before the complaint against the plaintiff was made.

It seems, that in an action for malicious prosecution, evidence of the general bad reputation of the plaintiff is admissible, to rebut the proof of want of probable cause, and also in mitigation of damages.

Since the abolition of special pleading, the defendant in an action for malicious prosecution may give evidence of facts tending to prove the plaintiff guilty of the criminal charge imputed to him, both in proof of probable cause, and in mitigation of damages; although he is not prepared with evidence to show, that these facts were known to him at the time of the complaint against the plaintiff.

Where, in the trial of an action for the malicious prosecution of the plaintiff, on a charge of burning his own building, for the purpose of defrauding the insurers thereon, the judge instructed the jury, in reference to the question of probable cause, that the evidence tended to prove three propositions, namely: 1. An intent or motive in the plaintiff to commit the crime; 2. Guilty conduct, or acts, or knowledge of the plaintiff; 3. That the fire was the act of an incendiary; and that any two of these propositions, if proved, would constitute probable cause, but that neither alone would be sufficient: It was held, that this direction was not correct in matter of law; but that the evidence to prove the prominent facts should have been distinctly laid before the jury, with specific instructions as to what leading facts, or classes of facts, in evidence, if proved, would or would not constitute reasonable or probable cause, leaving the facts and the inferences to be drawn from them to be found by the jury.

THIS was an action on the case for a malicious prosecution, tried before *Hopkinson,* J., in the court of common pleas. The writ bears date August 14th, 1847, and contains four counts. The defendants, Henry M. Towne, Joshua Shaw, and Marcus Randall,* are charged therein with having maliciously and without reasonable or probable cause instituted a complaint against the plaintiff, before Mark Doolittle, esquire, a justice of the peace for the county of Hampshire, on the 7th day of November, 1846, for burning the plaintiff's factory in Belchertown, with intent to defraud the insurers, the Washington Insurance Company of Providence, who had insured certain sums upon the factory and the stock and the machinery therein; and also with burning a grist mill in Belchertown belonging to Towne, the defendant, and one Ferry. It then sets forth, that Doolittle, after examination, had bound over the plaintiff to appear at the next court of common pleas

---

* This defendant had been acquitted on a former trial.

at Northampton to answer to said complaint; that an indict-
ment was found against him at that court containing two
counts, one for burning his factory with intent to defraud the
insurers, and one for burning the grist mill of Town and Ferry;
that the indictment was continued to the next term of the
court, when a *nolle prosequi* was entered on the indictment,
and a second indictment was found, on which the plaintiff
was tried and acquitted by the verdict of a jury. The second
indictment did not contain any count for the burning of the
grist mill. The record and proceedings before the magistrate
were only set forth in the first count. In the first and fourth
counts it was averred, that the plaintiff was discharged from
the prosecution against him, by the entry of a *nolle prosequi* on
the indictment. These two counts alone made any reference
to the charge of burning the grist mill. The defendants
pleaded jointly the general issue, with notice that if the plain-
tiff made out any case, they would prove that they acted
without malice, and had probable cause.

The plaintiff, to maintain the issue on his part, offered in
evidence copies of the complaint and record of the magis-
trate. The defendants objected, that, as the record of the
proceedings before the justice showed that he found there
was probable cause, and that he bound over the plaintiff to
answer to the complaint, this was a bar to the action; and
that the plaintiff ought not to be permitted to show there was
not probable cause; but the judge ruled that this was only
evidence of probable cause, and that the plaintiff might be
permitted to introduce the record of the court of common
pleas to show an acquittal, &c.; and that he might show
by any other proper and competent evidence that there was
not probable cause. The defendants objected to the admis-
sion of this record of the proceedings before the justice, under
any count but the first, in which it was set forth, but it was
admitted generally.

The defendants then insisted, that the plaintiff ought to be
required to produce all the testimony given before the magis-
trate on the part of the prosecution, if not that given by the
plaintiff, if he desired to control or impeach the finding of the

magistrate, to the end that the court might be enabled to de-termine, whether there was or was not probable cause for the prosecution; but the presiding judge ruled, that it was not necessary for the plaintiff to show what the evidence was which was given before the magistrate; and the plaintiff gave no evidence as to what witnesses were examined, or what testimony was given before Doolittle.

The plaintiff then offered in evidence copies of the indict-ments and record of the court of common pleas referred to in the plaintiff's writ; to the admission of which the defendants objected, first, on the ground that as the magistrate had found probable cause, that finding could not be controlled; and, sec-ondly, because the evidence did not prove an acquittal upon the prosecution commenced before Doolittle, as the first in-dictment was disposed of by a *nolle prosequi,* which in its legal effect was not an acquittal; it not being such a final determination of the prosecution, that another prosecution could not be commenced. The presiding judge ruled, that the record of the first indictment, for the reason stated, did not prove an acquittal, and it was·not admitted. This ruling precluded the plaintiff from recovering on the first and fourth counts. The record of the second indictment was admitted for both purposes. It was contended by the defendants, that the second indictment was an independent prosecution, and not a continuation of the prosecution commenced before Doolittle.

The plaintiff then offered to show by Edward Clarke, esquire, in order to control or impeach the finding of the justice, which was ruled to be *prima facie* evidence of prob-able cause, that the magistrate acted unfairly and conducted himself improperly in the examination; that he was the counsel of the complainant, and had entered into some agree-ment or understanding with the prosecutor, in advance, to bind the plaintiff over; and that he manifested prejudice and par-tiality upon the hearing before him in this, that he had first associated with him the said Clarke as a magistrate, and said Clarke had sat in the cause and hearing; and that on consultation after the hearing, it appearing that said Clarke's

opinion differed from Doolittle's, and was for an acquittal of the plaintiff, said Doolittle then denied having so associated said Clarke with him, and decided the cause alone. To the admission of this evidence the defendants objected, but the presiding judge ruled otherwise, and Clarke was admitted to testify to facts, which, it was contended, had a tendency to make out these points, and to weaken or destroy the force of Doolittle's decision. But the jury were instructed that they were not to take any opinion of Clarke's as the judgment of a magistrate in the case, or as having any weight against that of Doolittle; that the record was conclusive as to who sat in the cause; and that the effect of the evidence was only to show the bias of the magistrate.

After the plaintiff had once rested his case, it was objected, that he had given no evidence as to the defendants' agency in the finding or procuring of the second indictment: whereupon the plaintiff offered the district attorney, William Porter, esquire, as a witness, to show that the defendants were instrumental in getting up the second indictment against the plaintiff, in June, after the first had been disposed of as before stated; but from his testimony it appeared, that the defendants not only did not take any active part in getting it up in the way of giving testimony or procuring witnesses, but that they did not even know of the finding of the second indictment till after it was found; the same having been found by the grand jury upon the former evidence, at the suggestion of the district attorney, and without any consultation or communication with the defendants. The *nolle prosequi* appeared to have been entered upon the first indictment on account of a mistake in the name of the insurance company. He also testified, that the omission, in the second indictment, of the count found in the first indictment, charging the plaintiff with burning the grist mill of Towne and Ferry, was his own act, and was without the knowledge or consent of the defendants.

There was no other evidence in the case as to the agency of the defendants in getting up the second indictment; and

19 *

the defendants' counsel objected, that inasmuch as there was no evidence to the point, and inasmuch as the second indictment was a prosecution wholly independent of the one commenced before Doolittle, the defendants could not be held responsible for that indictment in which no notice was taken of the burning of the grist mill in which Towne was interested; but the presiding judge ruled, that the second indictment must be considered, upon the facts stated by the district attorney, as the consequence of the original complaint and of the first indictment; and that if the jury should be of opinion, that the defendants originated the complaint of their own malice and without any reasonable or probable cause, they were in law responsible for all that followed, and for the second as well as for the first indictment; the district attorney having rightly procured the second to be found, in consequence of the original wrongful act of the defendants.

There was no evidence offered on either side, as to whether the jury did or did not take time to deliberate or consider of their verdict when they retired; and it was contended by the defendants, as matter of law, that the plaintiff was bound to prove affirmatively that the jury did not deliberate, pause or hesitate in coming to the verdict which they rendered; but the presiding judge ruled and instructed the jury, that it was not necessary for the plaintiff to offer any proof touching this point.

There was no evidence as to whether Shaw gave any material testimony before the magistrate, and Towne was not a witness before him, though the complaint was made and sworn to by him.

The plaintiff then gave evidence tending to show express malice on the part of the defendants, and evidence tending to show, as he contended, that the defendants knew or had cause to believe that the plaintiff was innocent, and that they suborned or attempted to suborn witnesses to give evidence against the plaintiff.

The defendants then opened their defence, and, in order to make out probable cause and to rebut the plaintiff's evidence as to malice and want of probable cause, offered to show by

Mark Doolittle, esquire, the justice before whom the exami-
nation was had, what the whole testimony was which was
given on the part of the government; but the presiding judge
ruled that this could be shown only by the same witnesses
themselves produced upon the stand, or their depositions, ex-
cepting, however, what the defendants or their wives swore to,
as to which Doolittle was permitted to testify. There was
no evidence on either side, as to who all the witnesses were,
or what they testified to before Doolittle.

It was proved or admitted, that one William Matthews
gave evidence for the prosecution before Doolittle, and
Matthews, in March, 1848, when a former trial of this action
was had, and ever since, had been and still was residing out
of the commonwealth ; and that his deposition had been
taken to be used in the former trial by the defendants, for the
purpose of showing what he swore to upon that examina-
tion, but that he could not remember what testimony he did
give. His deposition was shown to the court, whereupon the
defendants' counsel offered to show by Doolittle what Mat-
thews's testimony was before him ; but the presiding judge
ruled, that this could only be done by Matthews in person or
by his deposition.

Myron Lawrence, esquire, a counsellor at law, was then
introduced as a witness by the defendants, for the purpose of
making out probable cause, by showing what Matthews told
Towne in his, Lawrence's, presence, touching certain confes-
sions of Bacon, as to Bacon's having burnt his factory, and
also for the purpose of proving the advice of counsel as a
defence to the action or otherwise ; and they offered to show,
by this witness, that Matthews, in the presence of Lawrence,
and before the complaint was made, told Towne that Bacon
had confessed to him, Matthews, that he, Bacon, threw fire
into the picker-room of his factory, whereby it was burnt; and
that he, Matthews, had seen certain tools and other articles
in his, Bacon's, dwelling-house, after the factory was burnt,
under the bed in the house, which tools and articles came
from Bacon's factory, as he, Matthews, knew ; Matthews hav
ing the year before been a partner with Bacon, and having

business at said factory with Bacon. But the presiding judge ruled, that this was not admissible for the purpose of showing probable cause, but that it might be admitted for the purpose of showing what the facts were, upon which Lawrence founded his opinion as counsel, given to Towne, as to the right and expediency of commencing a criminal prosecution against Bacon, for burning his factory and the grist mill, if he gave any advice, and he could give all the facts, and his statement was received for this purpose. It was admitted by the plaintiff, that the defendants did know, before the prosecution, that Matthews would testify to all that he did testify to before the magistrate, and at a subsequent period in the trial Lawrence testified to what Matthews stated before the magistrate, without objection.

The defendants then offered, in order to show probable cause and to rebut malice, one Squires, as a witness ; and they proposed to show by this witness that Shaw's wife, and one Mary Randall, whose deposition was in the case, and parts of which were allowed to be read, soon after the fire, and before the complaint was made, communicated to Squires, the witness, with a request that he would communicate it to Towne, the fact that they were present at the time . of the fire, and that they saw Bacon throw burning cotton into the picking-room of his factory, whereby it was burnt, and that he, Squires, did so communicate the same to Towne, before the complaint was made. But the presiding judge ruled that this evidence was inadmissible, and it was excluded.

The same evidence was offered by the defendants in mitigation of damages, but it was rejected by the presiding judge as inadmissible for that purpose. The defendants then offered to prove, in order to make out probable cause and in mitigation of damages, that the general character of the plaintiff, in the community where he resided at the time of the fire, was notoriously bad for honesty and integrity ; but the presiding judge ruled, that evidence of this description was not admissible to show probable cause, and could only be admitted in mitigation of damages.

The defendants then offered to prove what was testified to in the presence and hearing of Towne and Shaw, at the examination before Doolittle, (not as evidence given in a court of justice, but as statements or declarations made in his presence by third persons,) as furnishing probable cause for a prosecution. This evidence was considered as having particular application to Shaw, who the jury might find did not become a party to the prosecution till after the hearing at Doolittle's; and the plaintiff's counsel contending that he could recover on the second, third and fourth counts of his writ, all of which averred a prosecution commenced in June, 1847, which was long after the hearing at Doolittle's, it was contended by the defendants, if the jury should so find upon the other evidence in the case, that this evidence should be admitted in order to show what the defendants and Shaw in particular knew as to the plaintiff's guilt, and to show what was in the mind of the prosecutor when he commenced the prosecution.

The presiding judge having ruled that the first and fourth counts in the plaintiff's writ were bad, and that the plaintiff could only recover on the second and third counts, the plaintiff relied only on the act of the defendants in moving the prosecution before the magistrate to sustain these counts, and did not rely on any act done in reference to the indictment immediately. The conduct of the defendants afterwards was offered in evidence, as showing the motive with which they acted in instituting the prosecution, and as showing whether or not Shaw confederated in instituting it. The defendants also offered to prove the same facts, for the purpose of disproving malice and mitigating the damages; but the presiding judge ruled that this evidence was not admissible for any of these purposes.

The defendants also offered evidence to show, by the witness Squires, independent facts not in evidence before the magistrate, or proved to be known to the defendant when the complaint was made, having a tendency to prove that the plaintiff was actually guilty of the offence set forth in the indictment, and contended, that if the jury should be

satisfied of his guilt, this would be a bar to the action, and if not, that it was very proper to be given in evidence in mitigation of damages. But the presiding judge ruled that this evidence was not admissible for either of these purposes.

Although it did not appear who all the witnesses were, who testified before Doolittle for the government, or for the plaintiff, or what they testified to, or who all the witnesses were for the government and the plaintiff at the trial at Northampton; it did appear, that Shaw and his wife, and Mary Randall, wife of Marcus Randall, named in the plaintiff's writ as one of the defendants, but acquitted at the former trial of the case by a verdict in his favor, and one Sholtz and William Matthews and Artemas Owen were witnesses for the prosecution before Doolittle; and that the same, except Matthews, were at Northampton, and testified for the prosecution, and that Delia Bacon, the plaintiff's daughter, and Albert Bacon, the plaintiff's son, were witnesses before Doolittle and at Northampton for the plaintiff. It was proved or admitted, that the plaintiff gave exculpatory evidence upon the trial at Northampton, and that many witnesses were examined for him upon the trial. Mrs. Randall and Mrs. Shaw were at the fire, and they testified before Doolittle and at Northampton that they saw Bacon throw burning cotton into the picking-room of his factory, whereby it was burnt. Sholtz and Delia Bacon and Albert Bacon were at the fire, and they testified to the circumstances attending the fire. It was proved or admitted, that the plaintiff was at work in his factory with Delia Bacon, Albert Bacon and Sholtz. The fire occurred at about two or three o'clock in the afternoon on the 3d day of March, 1846, when all the men of the village, save Sholtz and one Humes, who was sick abed, some five or six in number, were absent from the village.

The defendants gave evidence tending to show an over-insurance on the property lost by fire, and an over-valuation, &c., and also evidence showing that the plaintiff talked of pulling down his old factory and building anew; that the plaintiff had a motive and opportunity to commit the offence

charged; and that these facts were known to the defendants, when the prosecution was commenced.

The question, so far as Towne was concerned, was not whether he was the prosecutor of the plaintiff before Doolittle, for it was admitted that he was; but the sole question was, whether he prosecuted upon reasonable and probable cause, or without probable cause and with malice; and as to Shaw the question was, whether he was a prosecutor at all either before Doolittle or at Northampton. His counsel insisted tha' he was merely a witness. But evidence was in the case tending to show that he was instrumental in getting up and carrying on the prosecution.

The account, which the plaintiff gave of the origin of the fire, connected with the account of it given by his own children and by Sholtz, all of which was proved to have been known to Towne, if not to Shaw, before the prosecution, was insisted upon by the defendants as furnishing abundant evidence of probable cause. The account of the origin of the fire given by the plaintiff seemed to imply spontaneous combustion. The factory had been owned formerly by Towne, and was built or repaired by Shaw, and the construction and situation of the building were well known to them. The time, place and circumstances of the fire, the construction of the building proved or admitted, and the unquestioned facts in the case, were relied on by the defendants, as showing that the fire could not have originated in spontaneous combustion.

The plaintiff contended, on the contrary, that every witness, or almost every witness, oroduced before Doolittle, was suborned, and that the whole testimony, or nearly all, for the prosecution, was false, and was known to be so by the defendants, and was got up by a conspiracy of the defendants to get the plaintiff indicted; and the plaintiff contended, that if the defendants did not know the testimony to be false, yet that the witnesses, particularly Mrs. Shaw, Mrs. Randall and Matthews, were wholly unworthy of credit at the time, that their reputation for truth and veracity was bad, and known to be so by the defendants.

It was in evidence, that Shaw, soon after the fire, called upon Laban Marcy of Greenwich, counsellor at law, and made some statements of facts communicated to him, as to Bacon's setting fire to his factory, as he said, by his wife and Mrs. Randall, his daughter, with a view of taking legal advice as to what he should do touching the prem-ises.   Shaw was proved to have written a letter to the in-surance company at Providence about the fire; and though neither Towne nor Shaw was proved to have had any thing to do with the actual finding of the second indictment, yet it appeared from the testimony of the district attorney, that he sent Shaw to Lowell after a witness; but this was before the first indictment was disposed of.

The plaintiff gave no evidence as to that part of the first count, and of the fourth count, which related to the burning of the grist mill, except what was furnished by the records put in.   The plaintiff gave no direct evidence as to the burn-ing of the grist mill; it came out in evidence, in the course of the trial, that the grist mill was a building adjoining or very near the plaintiff's factory, that the flames communi-cated from the factory, and it was consumed at the same time with the factory.

It was in evidence, that Towne and Shaw and Bacon had had suits and considerable litigation as to the factory and the grist mill, and that there were suits pending between Towne and Bacon at the time of the fire, and when the com-plaint was got up, growing out of the sale of the factory; and it was contended by the plaintiff, that one object Towne had in this prosecution was either to procure better security of the plaintiff for a debt, or to force a settlement of his mat-ters with Bacon, or that it was got up from motives of private malice and revenge for the supposed burning of his grist mill.

It did not appear, that Towne and Ferry had any insurance on their grist mill, which was an old one, nor did it appear what its value was.   It was proved or admitted, that neither Towne nor Shaw was present at the fire; Towne residing some four or five miles from the factory, and Shaw being

on a journey at the time. It was in evidence, that no attempt was made to impeach the general character of Mrs. Randall for truth and veracity before tne magistrate.

The presiding judge was asked by the defendants to give sundry instructions and directions to the jury, and among others the following : —

1. That it was not material whether the defendants did or did not in fact believe, that the plaintiff was guilty of the offence charged, if there was such a state of facts and circumstances really existing, as would have afforded reasonable and probable cause to any unprejudiced person in the defendants' situation for commencing a prosecution, as the defendants' belief or disbelief did not make and could not unmake any of the facts proved to exist in the case.

2. That the jury must be satisfied, affirmatively, that there was in fact no probable cause for the prosecution, and not merely that there was not apparently any probable cause; that there must not only not appear to be none, but that it must be proved that there was none; that if, upon the whole evidence, there should be any reasonable doubt whether the want of probable cause was made out by the plaintiff, ther the jury must find for the defendants.

3. That if the finding of the magistrate was not absolutely conclusive, but could in any way be impeached, it could be done only by the production, by the plaintiff, of the whole evidence given for the prosecution and by the plaintiff, so that the court and jury could understandingly revise and correct the judgment of the magistrate; unless, indeed, it should so happen (which was not the case here) that the defendants should see fit to produce the whole evidence in the defence.

4. That if the jury should be of opinion, that there was no evidence to support the fourth count of the plaintiff's writ, which respects the charge for burning the grist mill, then the defendants should have a verdict on that count, it being for a separate and distinct cause of action.

5. That a mere acquittal of the plaintiff was not *prima facie* evidence of want of probable cause.

6. That a criminal prosecution of this kind might be right

fully commenced or instituted before a magistrate, upon rep-resentations of facts constituting, if true, probable cause, made and proved to have been made by third persons to the prosecutor, before the complaint was made.

7. That a criminal prosecution of this kind might be lawfully commenced or instituted upon less evidence than would be required to convict, as in case of conviction the jury would have a right to require that all doubt should be removed; whereas, here nothing should be required but such evidence as would justify any unprejudiced person of common capacity to believe the party guilty.

8. That the defendants were not to be held to show, that they had such evidence as would convince every unprejudiced and ingenuous person, of common capacity and common cautiousness, of the probable guilt of the plaintiff; but only such evidence, or degree, or amount of evidence, as would be sufficient to induce any ingenuous and unprejudiced man of common capacity and common cautiousness, in the defendants' situation, to believe the plaintiff guilty; that the true question for the jury was, whether, out of this whole class of persons who were unprejudiced and of common capacity and of common cautiousness, any man could be found who would or could on this evidence believe the plaintiff guilty; and not whether every person of that class would believe him guilty on such evidence.

9. That if Shaw and Towne, or either of them, knew, before the complaint, that Mrs. Randall and Mrs. Shaw had stated that they saw Bacon throw burning cotton into the picker-room of his factory, and Mrs. Shaw and Mrs. Randall were so situated that they could be summoned as witnesses for the commonwealth, and the jury should believe that they were not then of bad reputation for truth and veracity, then there was probable and reasonable cause for this prosecution to the one so acting on it, unless the defendants knew, or had reasonable cause to believe, that such statements were false.

10. That if Shaw or Towne, or either of them, had been told, before complaint made, by Mrs. Shaw and Mrs. Randall,

Bacon *v.* Towne & others.

that they saw Bacon throw burning cotton into the picking-room of the factory, then there was reasonable and probable cause to commence this prosecution, if they, Mrs. Shaw and Mrs. Randall, were within reach of process, and there was a reasonable certainty of procuring their attendance as witnesses, unless they were of general bad reputation for truth in that community, or unless the plaintiff should show that the defendants knew or had reasonable cause to believe that such statements were false; or if Mrs. Randall only had so stated to Shaw and Towne, with the above qualification and limitations, then there was reasonable and probable cause for this prosecution to the one so acting on it; or if Mrs. Shaw so stated as aforesaid, then there was reasonable cause.

11. That if the jury should believe, that Towne and Shaw agreed together to prosecute the plaintiff, then the knowledge which one of them had, they might presume, was communicated to the other, so that facts known to one were known to both.

12. That if the defendants, before the complaint, had been told by Mrs. Shaw the story which it was proved she swore to on the trial before Doolittle, and had reasonable cause to believe her attendance could be procured as a witness, and the defendants did not know or have reasonable cause to believe her story to be false, and her reputation for truth was not bad, then there was reasonable and probable cause to commence this prosecution when it was commenced.

13. That the true question was, whether these facts were sufficient to make out probable cause known to the defendants when this complaint was made; and that if the jury should believe that the defendants knew the following facts, that is to say, [enumerating the facts tending to show probable cause,] then there was probable cause for this prosecution, and the jury had only to find whether these facts existed or not.

14. That if the defendants, before the complaint was made, knew of the testimony of Sholtz given before Doolittle

and they had reasonable cause to believe that he could be had as a witness, then there was reasonable and probable cause for the complaint, unless Sholtz was of bad reputation for truth, or the defendants knew or had good cause to believe his story false.

15. The judge was requested to make the same charge as to the combined independent accounts of Sholtz and Mrs. Shaw given before the justice, and so as to the combined accounts of Mrs. Shaw and Sholtz, of Owen and of Matthews.

16. The judge was also requested to charge the jury, whether any, and, if any, which, of the facts, proved to have been known to the defendants before the complaint, would have constituted and made out probable cause, if the defendants had good cause to believe, that they could procure the witnesses who had given the information to attend and give evidence in the cause.

The presiding judge ruled and charged the jury, as prayed for in the first, second, fifth and eleventh of the foregoing articles, and refused to charge according to the third. As to the other articles, namely, the sixth, seventh, eighth, ninth, tenth, twelfth, thirteenth, fourteenth, fifteenth and sixteenth, the judge instructed the jury as follows : —

The facts shown at the trial before the magistrate, in favor of the prosecution, were presumed to have been known to the defendants, at the institution of the prosecution; but this presumption did not extend to the facts tending to show the innocence of the plaintiff. Whether or not the latter were known to the defendants as well as the former, was a question to be determined from their connection with the former and from other evidence. Facts not proved at that trial, and not known to the defendants, though tending to prove the plaintiff's guilt, would not justify them. The jury must look at the case as it appeared to the defendants at the time of instituting the prosecution. The present issue was not whether the plaintiff was guilty or not guilty, but whether the defendants had reasonable cause to believe him guilty.

The defendants must be shown to have acted maliciously

and without reasonable cause. Though gross want of probable cause might be evidence of malice, yet no degree of malice would be sufficient to make the defendants liable, if they had probable cause; and if the defendants acted in good faith, without malice, they were justified, however much mistaken they might have been. Both malice and want of probable cause must be shown to support the action, and the burden of proof was on the plaintiff to prove both these facts. If the defendants fabricated evidence or tampered with witnesses to try to convict the plaintiff, yet if they had evidence without this, which was sufficient to constitute probable cause, they were to be acquitted here. Malice consists in a " bad mind," that is, either a direct intention to injure, or that degree of bad motive, or ill will, which would lead the mind to conclusions not warranted to the understanding of an impartial mind. Probable cause consists in that degree of evidence, which would induce a reasonable man to believe the accused party guilty; such as would convince or satisfy men of the usual and ordinary caution and judgment, when not governed by malice. What is probable cause, the facts being known, was a question of law for the court. In the application of the law to the facts, the jury must find whether such facts existed as the court should advise them were sufficient to constitute probable cause.

The judge declined to charge as the defendants requested, by going over all the facts, and stating how many of them, or what changes upon them, in all possible combinations, would, if believed, make out probable cause; but instructed them, that the evidence might be considered as tending to establish three propositions or facts, namely : 1. An interest or motive in the plaintiff to commit the crime; 2. Guilty conduct or acts or knowledge of the plaintiff; and, 3. That the fire was the act of an incendiary.

If they should find any two of these facts or propositions proved, they would be sufficient to constitute probable cause, and neither alone would be sufficient. A man was not to be convicted merely because a crime had been committed, nor because he had a motive to commit it, nor because his

20*

conduct was singular or inexplicable, and such as would indi-cate guilt in the absence of one of the other facts.

If they should find, for example, in the over-valuation of the property, or otherwise, a motive in the plaintiff to destroy his factory, that. alone would not, but that coupled with the fact that the act was incendiary, or with strong evidence of guilty consciousness, or such conduct as was inexplicable on a different hypothesis, would make sufficient probable . cause ; or, —

If they should find that the fire was the act of an incen-diary, that fact alone would not, but that fact with such conduct on his part as above described, or with the fact of his having a motive to do it, as shown in such an over-valuation as would indicate dishonesty, would make sufficient probable cause ; or, —

If they should find evident consciousness of guilt, exhibited in the plaintiff's conduct, and also find the act to have been incendiary, or that the plaintiff had a strong motive to com-mit this crime, they might then infer that the fire was incen-diary, and that he was the guilty party, and therefore that there was probable cause. But that merely suspicious con-duct, in the absence of evidence that the fire was criminal, and in the absence of any motive to burn the factory, or either of these circumstances, in the entire absence of the other two, would not make sufficient probable cause for the prosecution.

The facts stated by Mrs. Shaw and Mrs. Randall, or eithei of them, would, if known to the defendants, unquestionably be sufficient probable cause, provided the defendants might reasonably have believed them. But the mere fact that they knew those witnesses would so swear would not justify a prosecution, if, from the character of the witnesses, or from the other facts and circumstances known to the defendants, they could not, as reasonab'e and fair men, have given them credit.

The jury, under these rulings and instructions, rendered a verdict for the plaintiff, and the defendants alleged ex-ceptions.

*P. C. Bacon*, for the defendants.

*W. A. Bryant* and *L. Williams*, for the plaintiff.

SHAW, C. J. This is an action on the case against three defendants for a malicious prosecution, in making a complaint before a magistrate and procuring an indictment against the plaintiff, for unlawfully burning the factory in his occupation, for the purpose of defrauding the insurers upon it. It appears that the defendants laid a complaint before the magistrate, charging the plaintiff with the wilful burning of his factory to defraud the insurers, and also with burning a corn mill of the defendants. The plaintiff was bound over, and subsequently was indicted for those offences; but in consequence of a defect in the indictment, the public prosecutor entered a *nolle prosequi* thereon, and forthwith, another indictment was laid before the grand jury, for that part of the offence, which consisted in burning the factory, omitting the mill, and was found upon the evidence already given; upon which last indictment the plaintiff was tried and acquitted, whereupon this action for malicious prosecution was brought, and the plaintiff obtained a verdict. Sundry exceptions were taken at the time, by the defendants, which now come before us on a bill of exceptions.

The court below ruled, that the plaintiff could not recover on the first and fourth counts, because, as we understand, those counts averred a discharge from the indictment by a *nolle prosequi*, which was not sufficient to maintain the action. This decision, being in favor of the defendants, does not arise on their bill of exceptions; but as the question may arise, if the cause should be tried again, it is proper to say, that we consider the decision right. It must appear, before this action will lie, that the defendant in the indictment has been fully acquitted; but a *nolle prosequi* is no discharge of the crime, and no bar to a new indictment, even if it precludes the government from suing out new process, requiring the party to answer to the same indictment, which may be more doubtful. *Goddard* v. *Smith*, 6 Mod. 262; *S. C.* 1 Salk. 21; *S. C.* 2 Salk. 456; opinion of Buller, J., in *Morgan* v *Hughes*, 2 T. R. 231; *Croke* v. *Dowling* Bull N. P. 14.

1. The first exception taken by the defendants is, that the judgment of the magistrate, binding the plaintiff over to answer, was conclusive evidence of probable cause. This is certainly not within the authority of the case of *Whitney* v. *Peckham*, 15 Mass. 243, because the magistrate, in the present case, had no legal jurisdiction to hear and decide finally, but only to bind over, which is a mere preliminary step to further proceedings. But the authority of that case has been somewhat questioned in *Burt* v. *Place*, 4 Wend. 591. If regarded as evidence of probable cause, we think it is *prima facie* only, and not conclusive.

2. The defendants excepted to the admission of the record and proceedings before the magistrate, on the ground, that as the first indictment to which they led was withdrawn by a *nolle prosequi*, these proceedings became immaterial. But the court are of opinion that these proceedings were admissible. They were instituted by the defendants as complainants, and they led to the prosecution by indictment. The second indictment was in the nature of an amendment or supplement to the first; the original complaint, and binding over, was the efficient cause of the second indictment; otherwise the defendants had no connection with the actual prosecution, on which the plaintiff was acquitted by verdict of a jury; and upon these grounds, it should be decided, that this action cannot be maintained. This evidence was competent, not because the prosecution before the magistrate is itself the malicious prosecution complained of, but to connect the subsequent proceedings in the court of common pleas with the acts of the defendants.

3. Evidence was offered to control or impeach the finding of the magistrate, as any evidence of probable cause, on the ground, that he had acted unfairly and improperly in the examination. This, though objected to by the defendants, was admitted. No authority was offered in support of this decision, and the court are of opinion, that the evidence could not properly be admitted. It is not competent, we think, with a view to avoid the effect or impair the weight of a judgment, rendered by a court or magistrate, acting judicially within

his jurisdiction, to prove partiality or unfairness, in the particular case. A party actually convicted by a jury might, upon similar ground, contend that such conviction was obtained by bribery or other misconduct; that the party ought to have been acquitted upon the law and evidence; and that such conviction ought not to stand as evidence of guilt, or even of probable cause. Records of judicial proceedings have a certain intrinsic value and effect, ascertained by general rules of law, to which it is important to adhere. *Sayles* v. *Briggs*, 4 Met. 421.

4. It was insisted, on the part of the defendants, that it was the duty of the plaintiff to give in evidence all the evidence given before the magistrate, on the part of the prosecution, to the end that the court might determine whether there was or was not probable cause; but the presiding judge ruled that it was not necessary. We can perceive no tenable objection to this decision. The plaintiff must, undoubtedly, prove his case, a material averment of which is, that the prosecution was commenced without reasonable or probable cause, and the proof of this, though a negative proposition, lies on the plaintiff. But no rule requires that he shall prove all that took place on the trial of the case complained of, in which the plaintiff was acquitted; *a fortiori* we are not aware of any such rule, in regard to a preliminary inquiry before the magistrate. *Biggs* v. *Clay*, 3 Nev. & Man. 464.

5. It was next contended by the defendants, that the second indictment, found in June, 1847, was an independent prosecution, and not founded on the complaint made before the magistrate, and therefore was one for which the defendants were in no way responsible. And it was insisted, in confirmation of this view, that such second indictment did not charge the unlawful burning of Towne's grist mill, being the only part of the alleged offence, in which the defendants were specially interested. But the court did not sustain this view, but considered the second to be connected with the first, as effect and cause, so that the defendants might be the efficient cause of the second.

This seems to have been rather a matter of fact than of law, depending on the evidence. If one indictment was nol-prossed, and another returned on the same evidence, and for a substantive part of the same charge, to avoid a formal defect, we cannot say, that the original complaint made by the defendants was not the actual cause of the latter.

6. The next exception was, that the plaintiff had given no evidence, that the jury, on the trial of the criminal charge, had acquitted the plaintiff promptly, and without hesitation, delay or deliberation. It appears by the bill of exceptions, that no evidence was offered on this point on either side. The defendants' counsel insisted, and they have renewed that argument here, that the plaintiff was bound to prove affirmatively that the jury did not so pause or deliberate.

We see no ground, on which to sustain this exception. Suppose the fact of their pausing or not may have a bearing on the question of probable cause, as held in *Smith* v. *McDonald*, 3 Esp. R. 7, it is not necessary and indispensable evidence; the same essential fact may be proved by other competent evidence.

7. The defendants, having opened and stated their defence, offered Mark Doolittle, esquire, the magistrate, to prove what the testimony before him was, on the part of the government, to prove probable cause, and rebut the allegation of malice; but the presiding judge ruled, that this could only be done by the same witnesses who were produced on the stand, or their depositions, except as to testimony then given by the defendants or their wives. To this rejection of evidence the defendants objected.

The court are of opinion that this exception must be sustained. It was of vital importance for the defendants, in answer to any proof of want of probable cause, to prove affirmatively, that they had reasonable and probable cause for the prosecution, at the time the proceedings in it were commenced.

Probable cause is such a state of facts in the mind of **the**

prosecutor as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person arrested is guilty. The facts testified to on the examination may have been very influential in raising such suspicion or belief, and are therefore competent evidence to show the ground he had of cause to believe, whether they were true or not. They are therefore facts material to the issue, to be proved by any witnesses who can testify to them, as well as by those who testified at the examination. Those witnesses may be dead, absent or insane; they. may have forgotten them, or refuse to testify to them, or even deny them; it is not the less true that they did so testify, and if the testimony was of a character to induce a belief or strong suspicion, in the mind of a reasonable man, of the guilt of the accused of the crime charged, they had a direct bearing on the issue of probable cause or not, in the action for malicious prosecution. 2 Greenl. Ev. § 454; *French* v *Smith*, 4 Verm. 363.

Probable cause does not depend on the actual state of the case, in point of fact, but upon the honest and reasonable belief of the party commencing the prosecution. *James* v. *Phelps*, 11 Ad. & El. 483, 489.

The only case we are aware of, which seems to countenance an opposite rule, is that of *Burt* v. *Place*, 4 Wend. 591, which was a case of gross fraud and oppression under the forms of law, practised by the defendant himself, and in which there was abundant evidence of malice, groundlessness and fraudulent design, in the suits complained of as malicious.

The general rule is stated in Bull. N. P. 13, 14; 2 Greenl. Ev. § 449; Steph. N. P. 2282, 2284; *Wilmarth* v. *Mountford*, 4 Wash. C. C. 79.

8. This exception was substantially the same, except that it applied to the testimony of Matthews, whose deposition was taken, but who failed to recollect what his testimony was before the magistrate. For the reason already given, the proof offered of his testimony before the magistrate ought to have been received, because it might have operated to produce a reasonable belief of the guilt of the plaintiff; and the

knowledge that he would so testify might have been one of the grounds on which the defendants made their complaint before the magistrate. *French* v. *Smith*, 4 Verm. 363.

Indeed, it appears by the bill of exceptions, that the defendants did know before the commencement of the prosecution, that Matthews would testify to the facts, which he did in fact testify to on the examination.

9. In order to rebut malice and show probable cause, the defendants offered one Squires as a witness, who would testify that two women, Shaw's wife and Mary Randall, soon after the fire, and before the complaint, communicated to the witness, with a request that he would communicate to Towne, the fact, that they were present at the fire, and saw Bacon, the plaintiff, throw burning cotton into the picking-room of his factory, whereby it was burnt, and that he did so communicate the information to Towne before the complaint. The presiding judge rejected this evidence as inadmissible.

We cannot perceive upon what ground this evidence was rejected. It had a direct tendency to create a belief in the minds of the defendants of the plaintiff's actual guilt of the offence charged. The reason assigned by one of the defendants' counsel is, that it was hearsay; but we think, in the ordinary transactions of life, men do not hesitate to act on information until they put their informants upon oath, if, indeed, such oath would not be extrajudicial and unlawful.

The reason assigned by the other counsel is, that these women testified to the same facts before the magistrate. Without adverting to the fact that proof of such testimony was rejected, it was important for the defendants to show, that this information was communicated to them before the complaint, and therefore that they had reasonable expectation of being able to prove it. We think this evidence ought to have been received and laid before the jury. *Broad* v. *Ham*, 5 Bing. N. C. 722.

10. We are inclined to think that evidence of the general bad reputation of the plaintiff should have been admitted, to rebut the proof of want of probable cause, as well as in mitigation of damages. The proof of want of probable

cause lies on the plaintiff. The same facts, which would raise a strong suspicion in the mind of a cautious and reasonable man, against a person of notoriously bad character for honesty and integrity, would make a slighter impression if they tended to throw a charge of guilt upon a man of good reputation. *Rodriguez* v. *Tadmire*, 2 Esp. R. 721; *Wood* v. *United States*, 16 Pet. 342, 366; 2 Greenl. Ev. § 458. But see *Newsam* v. *Carr*, 2 Stark. R. 69.

11. The exception relating to the defendants' offer to prove what was testified to in the presence and hearing of Towne and Shaw, at the examination before Doolittle, not as evidence given in a court of justice, but as statements or declarations made in the magistrate's presence by third persons, as furnishing probable cause for a prosecution, was not argued.

12. The court are of opinion, that under our present forms of proceeding, where special pleading is not admissible, a defendant may, to rebut malice, and prove probable cause, show facts tending to prove the actual guilt of the plaintiff of the criminal charge imputed to him, though the defendant is not prepared with evidence to show that such facts were within his knowledge at the time of the complaint. If they were then true, and existed, they might have been known to the defendant, though he cannot now prove how he knew them, and though they were not so within his personal knowledge, that he could testify to them on the trial of the indictment. But if it were doubtful, whether they could be given in evidence for these purposes, the court are of opinion that they were competent in mitigation of damages, and ought to have been received in evidence. *Bell* v. *Pearcy*, 5 Ired. 83.

13. The exception relating to proof by the defendants of their own conduct, in order to disprove malice and mitigate the damages, the same facts having been already in evidence on the part of the plaintiff, to show the defendants motive in instituting the prosecution, is not material to be considered.

14. The court are of opinion, that the judge, at the trial, should have somewhat more distinctly directed the jury, what

leading facts, or classes of facts, if proved to the satisfaction of the jury, would constitute reasonable and probable cause for the prosecution, and what would not, leaving the facts and the inferences to be drawn from them to be found by the jury. The judge declined so to instruct the jury, but instructed them, that the evidence might be considered as tending to establish these propositions or facts : —

1. An intent or motive in the plaintiff to commit the crime ; 2. Guilty conduct, or acts, or knowledge of the plaintiff; 3. That the fire was the act of an incendiary ; and that if they found any two of these propositions proved, they would constitute probable cause, but that neither alone would be sufficient. We are of opinion that this direction was not correct in matter of law.

It is very questionable, whether, if the plaintiff had a motive to burn his factory, and it was true that the factory was wilfully burnt, it would be sufficient to raise a strong suspicion against the plaintiff, without some further evidence to fix the charge on him. But further, guilty conduct, acts and knowledge, alone, if they were of such a nature as to make them bear upon this particular charge of burning his factory, such as manifestations of conscious guilt, obscure and equivocal admissions, futile attempts to attribute the fire to other causes, and the like, might be alone sufficient to raise that belief or suspicion, which would amount to probable cause. But guilty knowledge, acts and conduct, if they did not lead to a belief of the plaintiff's guilt of this particular charge, would not alone, or with either of the other hypothetical cases, amount to proof of probable cause. In order to enable the jury to pass upon the facts in question, and the court to decide whether in law, if proved, they would constitute probable cause, the evidence tending to prove the prominent facts of the particular case should have been distinctly laid before the jury, with a more specific direction as to the law. *Panton* v. *Williams*, 2 Ad. & El. N. S. 169.

*Verdict set aside, and new trial ordered.*